IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| VIOLET GOODWIN,<br><br>                    Plaintiff,<br><br>vs.<br><br>VANDER, in their individual<br>capacity, et al.,<br><br>                    Defendants. | 8:21-CV-417<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the defendants' motion for summary judgment (filing 129). The Court will grant the motion.

## I. STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that

there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis Cty.*, 653 F.3d 745, 751 (8th Cir. 2011). The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

## II. BACKGROUND

This case began with a traffic stop on May 24, 2021. Filing 128 at 1.[1] Three Omaha police officers—Detective Cortes Clark, Detective Ricardo Martinez, and Officer Jordan Vander Zwaag—were on patrol when Clark saw a vehicle make an unsignaled lane change. Filing 128 at 1. They initiated a traffic stop. Filing 128 at 1. The driver of the vehicle wasn't able to produce a driver's license, and a records check revealed that his license was suspended. Filing 128 at 1-2. The plaintiff, Violet Goodwin, was the front-seat passenger. Filing 128 at 2. She was the registered owner of the car. Filing 128 at 3. The plaintiff's teenage son was in the back seat. Filing 128 at 4; filing 7 at 1.

---

[1] Pursuant to NECivR 56.1, a party moving for summary judgment must include in its brief a statement of material facts about which the movant contends there is no dispute, and the party opposing summary judgment must include in its brief a concise response to that statement of facts, noting any disagreement. Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response. NECivR 56.1(b)(1)(B).

Vander Zwaag asked the plaintiff to step out of the car. Filing 128 at 3. She had a large purse, and Vander Zwaag asked whether she had any weapons. Filing 128 at 3. She said she had a registered firearm in the car, and Martinez asked her to hand her purse to him. Filing 128 at 4. Clark, meanwhile, asked the plaintiff's son to step out of the car as well. Filing 128 at 4.

A K-9 unit, with Officer Jodi Sautter, arrived about 7 minutes after the traffic stop. Filing 128 at 1, 4. Martinez searched the plaintiff's purse, and Clark retrieved her gun from the car. Filing 128 at 4-5. Sautter and Martinez determined that the gun was a Smith & Wesson, not the Glock listed on the plaintiff's firearm registration card. Filing 128 at 5. Meanwhile, Vander Zwaag found out that the plaintiff's gun registration permit had been revoked. Filing 128 at 5. Vander Zwaag had no further contact with the plaintiff for several minutes, until he issued her a citation for possessing an unregistered firearm. Filing 128 at 5; filing 127-7.

The plaintiff sued Officers "Vander," "Swaag," and "Jordan"—whom the undisputed evidence now shows are all the same person, Jordan Vander Zwaag—and the Omaha Police Department for alleged civil rights violations. Filing 7. On initial review, the Court permitted the plaintiff to proceed to service of process on her (1) Fourth Amendment claim against Vander Zwaag in his individual capacity, (2) Equal Protection claim against Vander Zwaag in his individual capacity, and (3) Equal Protection and Fourth Amendment claims against the City of Omaha based on an alleged racial profiling policy. Filing 11 at 1-3. The defendants move for summary judgment. Filing 126.

### III. DISCUSSION

#### 1. INDIVIDUAL CAPACITY CLAIMS

The Court will begin with the individual capacity claims against Vander Zwaag, who asserts qualified immunity. Filing 129 at 4-11. Qualified immunity

shields public officials performing discretionary functions from liability for conduct that does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Parker v. Chard*, 777 F.3d 977, 979 (8th Cir. 2015); *see Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly, and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Pearson*, 555 U.S. at 231. It gives government officials breathing room to make reasonable but mistaken judgments about open legal questions and protects all but the plainly incompetent or those who knowingly violate the law. *Parker*, 777 F.3d at 979-80.

In determining whether a government official is entitled to qualified immunity, the Court asks (1) whether the facts alleged establish a violation of a constitutional or statutory right and (2) whether that right was clearly established at the time of the alleged violation, such that a reasonable official would have known that his actions were unlawful. *Johnson v. Phillips*, 664 F.3d 232, 236 (8th Cir. 2011); *see Parker*, 777 F.3d at 980. Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken. *Messerschmidt*, 565 U.S. at 546; *Pearson*, 555 U.S. at 244. The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson*, 555 U.S. at 231.

For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is

doing violates that right. *Parker*, 777 F.3d at 980. Clearly established law is not defined at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced. *Id.*; s*ee Seymour v. City of Des Moines*, 519 F.3d 790, 798 (8th Cir. 2008). It is unnecessary to have a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. *Parker*, 777 F.3d at 980.

(a) Fourth Amendment

The plaintiff conclusorily alleges that she and her son were "arrested, detained, questioned, and searched with no probable cause" other than an illegal policy. Filing 7 at 2. But to begin with, while the plaintiff alleges that the driver of her vehicle was ticketed for driving with a suspended license rather than a failure to signal, she pointedly *doesn't* allege that the failure to signal didn't happen. *See* filing 7 at 4-5. And she hasn't contested the defendants' statement that it did. *See* filing 128 at 1.[2] So, on the record presently before the Court, the initial traffic stop was lawful.

Next, the "stop and frisk," or *Terry* stop, which is permissible if two conditions are met: The investigatory stop must be lawful, and the police officer must reasonably suspect that the person stopped is armed and dangerous. *Arizona v. Johnson*, 555 U.S. 323, 326-27 (2009) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). In a traffic-stop setting, the first *Terry* condition—a lawful investigatory stop—is met whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation. To

---

[2] The plaintiff does allege that the violation was a "pretext" for the stop, but that doesn't mean it didn't happen. *See Whren v. United States*, 517 U.S. 806, 812-13 (1996); *United States v. Roggeman*, 279 F.3d 573, 581 n.5 (8th Cir. 2002).

justify a patdown of the driver or a passenger during a traffic stop, however, the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous. *Id*. at 327.

Once a vehicle has been lawfully detained for a traffic violation—which, again, is established here—police officers may order the driver and passengers out of the car pending completion of the stop. *Id*. at 331 (citing *Pennsylvania v. Mims*, 434 U.S. 106 (1977); *Maryland v. Wilson*, 519 U.S. 408 (1997)). And a traffic stop can last as long as reasonably necessary to conduct this routine investigation, conduct a criminal history search, and issue a citation. *United States v. Payne*, 534 F.3d 948, 951 (8th Cir. 2008).

There's nothing to suggest that the stop was unreasonably prolonged here. And once the officers were aware of the weapon in the vehicle, it was reasonable to search the passengers. *See United States v. Green*, 946 F.3d 433, 439 (8th Cir. 2019); *United States v. Payne*, 534 F.3d 948, 952 (8th Cir. 2008); *cf. United States v. Hardy*, 375 F. App'x 658, 660 (8th Cir. 2010). In determining whether an officer had reasonable suspicion based on specific, articulable facts, the Court looks at the totality of the circumstances, allowing officers to draw on their experience and training. *United States v. Halverson-Weese*, 30 F.4th 760, 764 (8th Cir. 2022). Moreover, this issue is presented in the context of qualified immunity, which asks the Court to identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment. *See White v. Pauly*, 580 U.S. 73, 79 (2017). The plaintiff hasn't identified such a case here, nor is the Court aware of any.

And beyond that, the only defendant here is Vander Zwaag, who didn't do much if any of the searching or seizing of the plaintiff or her son. The Court finds no basis to conclude that *any* of the police conduct here violated clearly established Fourth Amendment rights—but that's particularly true of Vander

Zwaag, who seems only to have stood next to the car, run record checks, and issued a citation. *See* filing 128 at 2-5. Vander Zwaag is entitled to qualified immunity from the plaintiff's Fourth Amendment claim.

(b) Equal Protection

Allegations of a traffic stop based on the plaintiff's race present a cognizable Equal Protection claim. *Johnson v. Crooks*, 326 F.3d 995, 999 (8th Cir. 2003). Such conduct, if proved, would violate a clearly established right. *See id.*; *Parada v. Anoka Cnty.*, 332 F. Supp. 3d 1229, 1245 (D. Minn. 2018). But such a claim requires proof that police exercised their discretion to enforce the traffic laws on account of race, which requires proof of both discriminatory effect and discriminatory purpose. *Johnson*, 326 F.3d at 999. When the claim is selective enforcement of the traffic laws or a racially-motivated arrest, the plaintiff must normally prove that similarly situated individuals were not stopped or arrested in order to show the requisite discriminatory effect and purpose. *Id.*; *accord Saunders v. Thies*, 38 F.4th 701, 714 (8th Cir. 2022), *cert. denied*, 143 S. Ct. 1006 (2023); *Clark v. Clark*, 926 F.3d 972, 980 (8th Cir. 2019).

No such evidence is present here. *See*, *e.g.*, *Clark*, 926 F.3d at 980; *Poole v. Flanery*, 162 F. App'x 661, 662 (8th Cir. 2006); *see also United States v. Gomez Serena*, 368 F.3d 1037, 1041 (8th Cir. 2004). Nor is there any other evidence tending to prove discriminatory effect or purpose, such as "statistical *or* other evidence which addresses the crucial question of whether one class is being treated differently from another class that is otherwise similarly situated." *See Giron v. City of Alexander*, 693 F. Supp. 2d 904, 938 (E.D. Ark. 2010); *see also United States v. Hare*, 308 F. Supp. 2d 955, 989-1000 (D. Neb. 2004). As the non-moving party, it was the plaintiff's burden to identify affirmative evidence from which a jury could find that she had carried her burden of proving the pertinent motive. *Johnson*, 326 F.3d at 1000. And the

combination of even an arbitrary stop, with a difference in race between the person stopped and the officer, wouldn't establish a prima facie case of racial discrimination. *Id*. There is simply nothing to substantiate the plaintiff's conclusory allegations of racially motivated selective enforcement.

## 2. CITY OF OMAHA

The plaintiff alleges that her detention and search were conducted solely because

> this is the illegal practice, policy of the bandit police officers with people of color in this particular area, where persons considered to be illiterate, uneducated, and poor and powerless to redress grievances are primarily stopped, and as a practice, a policy and procedure, the police officers violate people of color's rights without any probable cause.

Filing 7 at 2. But the City denies the existence of any such policy. Filing 129 at 11-12. And on a motion for summary judgment, it's the movant's initial burden to show—that is, to point out to the Court—an absence of evidence to support a nonmoving party's case; then, the nonmoving party has an affirmative burden to designate specific facts creating a triable controversy. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Rusness v. Becker Cnty., Minn.*, 31 F.4th 606, 614 (8th Cir. 2022).

In other words, once the City called into question the plaintiff's evidence of a racial profiling policy, it was the plaintiff's burden to respond with evidence. She hasn't done so.

To begin with, to the extent that the plaintiff can be read to have alleged that the City was deliberately indifferent to the behavior of its officers, the

Eighth Circuit "has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." *Saunders*, 38 F.4th at 715. In the absence of any underlying individual liability, a deliberate indifference claim is also absent. *See id*.

Nor is there evidence that any official municipal policy or custom of some nature caused a constitutional tort. *See id*. There must be *something* from which one could begin to draw an inference that the conduct complained of resulted from an unconstitutional policy or custom. *See Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004); *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003). But here, the City has presented undisputed evidence that its official written policies prohibit biased policing. Filing 128 at 7. And that's the only evidence of an official policy in the record. *See Wedemeier v. City of Ballwin, Mo.*, 931 F.2d 24, 26 (8th Cir. 1991).

Even had the plaintiff proved a claim regarding this single incident, the Court could not rely on it to infer the existence of an unconstitutional policy or custom contradicting the official written policy. *See Johnson v. Douglas Cnty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013); *Wedemeier*, 931 F.2d at 26. But the plaintiff doesn't even have that—much less evidence of the sort of pattern of behavior that might suffice to create a factual dispute regarding the existence of some sort of policy or custom. *See Johnson*, 725 F.3d at 829; *Ware v. Jackson Cnty., Mo.*, 150 F.3d 873, 883 (8th Cir. 1998); *Wedemeier*, 931 F.2d at 26; *see also Wilson v. Evans*, 18 F. App'x 442, 443 (8th Cir. 2001).

## IV. CONCLUSION

To summarize: There is no evidence that Vander Zwaag violated the plaintiff's clearly established Fourth Amendment rights, there is no evidence

that the plaintiff's Equal Protection rights were violated by Vander Zwaag, and there is no evidence of any unconstitutional policy or custom of the City of Omaha. Accordingly,

IT IS ORDERED:

1.  The defendants' motion to dismiss (filing 126) is granted.

2.  The plaintiff's complaint is dismissed.

3.  The plaintiff's "motion for summary judgment" (filing 107) is denied as moot.

4.  A separate judgment will be entered.

Dated this 14th day of March, 2024.

BY THE COURT:

John M. Gerrard
Senior United States District Judge